**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Divisions**

**JAMES EARL WILSON, JR.**

       **Petitioner,**

v.                                                     **Criminal Action No. 4:02cr80**

**UNITED STATES OF AMERICA,**

       **Respondent.**

**OPINION and ORDER**

Pending before the court is a motion entitled "A letter in leiu [sic] of that of a More Formal Brief In The Matter of The U.S.A. V.S. [sic] James Earl Wilson", filed by James Earl Wilson, Jr. ("the petitioner") on March 8, 2006. The petitioner makes numerous arguments attacking his conviction and sentence, most of which relate to ineffective assistance of counsel, the validity of his guilty plea, and United States v. Booker, 125 S. Ct. 738 (2005). Because the claims brought by the petitioner are claims that challenge his conviction or sentence, the court **CONSTRUES** the petition as one brought pursuant to section 2255. See 28 U.S.C. § 2255.

However, the court finds that it is "indisputably clear from the materials presented . . . that the petition is untimely and cannot be salvaged by equitable tolling principles." Hill v. Braxton, 277 F.3d 701, 707 (4th Cir. 2002). Furthermore, even if the court were to consider the substance of the petition, the court finds that it plainly appears from the face of the petition that the petitioner is not entitled to relief and that the petition would be subject to summary dismissal. See Rule 4, Rules

Governing Section 2255 Proceedings. Because the record conclusively demonstrates that the petitioner is not entitled to relief, the court declines to hold an evidentiary hearing. See R. Governing § 2255 Proceedings in U.S. Dist. Cts. 8(a). Thus, the petitioner's motion is **DISMISSED.**

## I. Background

On June 20, 2002, petitioner was indicted on several charges relating to a conspiracy to commit robbery: Count 1: Conspiracy to Commit Robbery, in violation of Title 18, United States Code, Section 1951; Counts 2, 4-6, and 8-19: Interference with Commerce by Robbery, in violation of Title 18, United States Code, Sections 1951 and 2; Counts 3 and 7, Using and Brandishing a Firearm During a Crime of Violence, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(ii), (c)(1)(C), and 2; and Count 20, Felon in Possession of Firearm, in violation of Title 18, United States Code, Section 922(g). On August 13, 2002, the petitioner pleaded guilty pursuant to a written plea agreement to Counts 1, 2, 4-6, 8-20, which include all charges except the two charges for using and brandishing a firearm during a crime of violence.

Prior to sentencing, a presentence report was prepared by the Probation Office of this court. On January 16, 2003, petitioner appeared for sentencing. This court considered the United States' motion for upward departure, pursuant to U.S.S.G. § 3D1.4. The United States argued that, under the procedure used for determining the offense level on multiple counts, ten robberies were not taken into account in calculating petitioner's offense level. Because each robbery was grouped separately, there was a total of 16 units, yet under the relevant guidelines, any additional units in excess of five has no effect on a defendant's offense level. See U.S.S.G. § 3D1.4. The court accepted the United States' reasoning and granted its motion for upward departure, noting the severity with which robbery is treated in Virginia state courts. Thus, petitioner's offense level was increased by ten

points. Based on an adjusted offense level of 40 points and a criminal history category of IV, petitioner's guideline range was 360 months to life. Accordingly, this court sentenced petitioner to a term of imprisonment of 360 months.

The petitioner did not appeal this sentence and has not previously filed a section 2255 petition. On March 8, 2006, the petitioner filed the instant motion. Because this matter is one that can be addressed without the assistance of the United States, this court has not ordered the United States to respond. See R. Governing § 2255 Proceedings in U.S. Dist. Cts. 4(b). Thus, this matter is now ripe for review.

## II. Discussion

The petitioner did not file his motion pursuant to any particular statute. However, as the petitioner's claims attack his conviction and sentence, the court will construe the petition as one brought under Title 28, United States Code, Section 2255. Such a motion is properly brought before the court which imposed the sentence. The court is mindful of the necessity of providing notice to the petitioner of the consequences if the court construes what has been labeled otherwise, as a motion pursuant to section 2255. See United States v. Emmanuel, 288 F.3d 644, 649-650 (4th Cir. 2002). "Such a recharacterization can have serious consequences for the prisoner, for it subjects any subsequent motion under section 2255 to the restrictive conditions that federal law imposes upon a 'second or successive' (but not upon a first) federal habeas motion." See Castro v. United States, 2003 U.S. LEXIS 9197 at *6.

In Castro the Supreme Court adopted the same rule espoused in Emmanuel and held that a court may not recharacterize a pro se litigant's motion as the litigant's first section 2255 motion unless the court informs the litigant of its intent to recharacterize, warns the litigant that the

recharacterization will subject any subsequent section 2255 motion to the law's restrictions on successive 2255 motions, and provides the litigant with the opportunity to withdraw or amend the filing. Id. However, the Fourth Circuit explains: "[T]he notice requirements imposed . . . are based on the assumption that the recharacterization will have some adverse consequence on the movant. In cases where no adverse consequences will ensue, the district court need not give the movant any notice prior to proceeding with the recharacterization." Emmanuel, 288 F.3d at 650. As discussed below, because it has been over three years since the petitioner's conviction became final, the court finds that the recharacterization will have no adverse consequence on the movant. Therefore, the court construes the petitioner's motion as one brought pursuant to section 2255.

**A.      Timeliness of Petition**

The court observes that, if the petition is construed as one pursuant to section 2255, it is not timely. A petitioner collaterally attacking his sentence or conviction bears the burden of proving that his sentence or conviction was imposed in violation of the United States Constitution or laws, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. See 28 U.S.C. § 2255. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 110 Stat. 1214 (1996), made substantial changes to section 2255. The AEDPA includes stringent limitations on the filing of successive section 2255 petitions and assigns a "gatekeeping" function for the screening of habeas petitions. See Felker v. Turpin, 518 U.S. 651, 664 (1996) (addressing the AEDPA's impact on the Supreme Court's original jurisdiction). Most importantly, for purposes of addressing these petitions, the AEDPA implemented a one-year limitations period applicable to the filing of section 2255 petitions. In relevant part, section 2255 provides:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of –
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.

Also, among the AEDPA's more significant provisions is its stringent limitation on a federal prisoner's ability to bring a "second or successive" post-conviction motion pursuant to section 2255. See 28 U.S.C.A. § 2255. Specifically, a prisoner may only bring a second or successive section 2255 motion in one of two circumstances: The prisoner must either (1) have newly discovered evidence, or (2) be relying on a new rule of constitutional law that the Supreme Court has made retroactively applicable to collateral proceedings. See id.; Emmanuel, 288 F.3d at 647.

The petitioner was sentenced on January 16, 2003 and did not appeal his conviction. Thus, the instant motion was filed more than three years after the date on which the judgment of conviction became final. See United States v. Sanders, 247 F.3d 141-144 (4th Cir. 2001). From the motion itself, there has been no showing of any impediment by the government that would have prevented the petitioner from filing his section 2255 motion at an earlier date, and the petitioner's claims are

not based on any rights newly recognized by the Supreme Court which have been made retroactive on collateral review. States v. Morris, 429 F.3d 65 (4th Cir. 2005)(finding that Booker is not retroactive on collateral review). Therefore, it is "indisputably clear from the materials presented . . . that the petition is untimely and cannot be salvaged by equitable tolling principles." Hill v. Braxton, 277 F.3d 701, 707 (4th Cir. 2002). Thus, the limitations period on the petitioner's section 2255 motion has expired.

**B.      Even If Petition Were Timely, Petitioner's Arguments Are Without Merit**

The court observes that even if the petition were timely, the petitioner would not be entitled to relief because his claims are without merit. Most of the petitioner's numerous claims are related in some way to the validity of his guilty plea based on ineffective assistance of counsel. The court addresses each claim below.

**1.      Ineffective Assistance of Counsel**

The petitioner claims that he was denied effective assistance of counsel, as guaranteed under the Sixth Amendment to the Constitution. Specifically, he argues that his counsel, Barry McCracken, was ineffective for: (1) misleading him into entering a plea agreement when the petitioner thought he could only be sentenced to 180 months; (2) failing to investigate the petitioner's background and request a competency evaluation; and (3) failing to appeal, file a habeas petition, or contact the petitioner after sentencing.

The Sixth Amendment provides in relevant part: "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence [sic]." U.S. CONST., amend. VI. The Sixth Amendment right to counsel includes the right to the effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). To establish a claim for ineffective


assistance of counsel, a defendant must prove both (1) that his attorney's conduct fell below an objective standard of reasonableness, and (2) that the attorney's deficient performance caused him prejudice. Id. at 687-91. To show deficient performance, the petitioner must show that he received deficient legal representation, measuring the competency of his counsel against what "an objectively reasonable attorney would have done under the circumstances existing at the time of the representation." Savino v. Murray, 82 F.3d 593, 599 (4th Cir. 1996).

A claim that an attorney's performance was below average is insufficient to show deficiency; "rather, the attorney's actions must fall below the wide range of professionally competent performance." Griffin v. Warden, Md. Correctional Adjustment Ctr., 970 F.2d 1355, 1357 (4th Cir. 1992). Under Strickland, "there exists a strong presumption that counsel's conduct was within a wide range of reasonably professional conduct, and courts must be highly deferential in scrutinizing counsel's performance." Kratsas v. United States, 102 F. Supp. 2d 320, 322 (D. Md. 2000), aff'd, 2001 WL 474684 (4th Cir. 2001), citing Strickland, 466 U.S. at 688-89. Prejudice is defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

Furthermore, the petitioner who alleges ineffective assistance of counsel following entry of a guilty plea has an even higher burden to meet. See Hill v. Lockhart, 474 U.S. 52, 59 (1985); Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297-98 (4th Cir. 1992). Petitioner must demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. In evaluating a post-guilty plea claim of ineffective assistance of counsel, statements previously made under oath affirming satisfaction

with counsel are binding on the petitioner absent "clear and convincing evidence to the contrary." Fields, 956 F.2d at 1299. That a plea bargain is favorable to a defendant and that accepting it was a reasonable decision is evidence of the "voluntary and intelligent nature of the plea." Id.

    **a.**    **Misleading petitioner to believe that he was only facing 180 months**

First, the petitioner claims that his plea was not knowing and voluntary because his attorney misled him by allowing him to plead guilty when the petitioner believed that he could only be sentenced to a maximum of 180 months. Furthermore, he claims that he was promised that the maximum he could receive was 180 months. The petitioner does not provide any support for his claims other than his own self-serving statements.

Even assuming *arguendo* that the petitioner's attorney somehow misled or promised the petitioner that he could not be sentenced to more than 180 months, the petitioner would not be able to prove prejudice affecting the knowing and voluntary nature of his guilty plea because the record of the plea colloquy expressly repudiates the petitioner's claim. During the hearing, the petitioner represented that he understood the charges to which he was pleading and their maximum penalties, that he was entering the plea agreement freely and voluntarily, that no promises were made to him other than what was contained in the written plea agreement, and that no one had threatened him in any way or used force against him to induce him to plead guilty.

In addition, the plea agreement, which the court reveiwed with the petitioner, states that "any estimate of the probable sentencing range under the sentencing guidelines that the defendant may have received from the defendant's counsel . . . is a prediction, not a promise, and is not binding on . . . the Court." (Plea Agreement ¶ 3.) Furthermore, the petitioner has presented no evidence to contradict his representations to the court during the plea colloquy that he was fully aware of the

charges he faced and the direct consequences of his plea, and that he was satisfied with his counsel's performance.  See Fields, 956 F.2d at 1299.  Petitioner is therefore bound by his representations during the plea colloquy.  See Beck v. Angelone, 261 F.3d 377, 395 (2001).  Accordingly, even if the petitioner's counsel misled him to believe that he was only facing at most 180 months, the court corrected the alleged misunderstanding during the plea colloquy.

Moreover, as stated above, in challenging a conviction entered after a guilty plea, the defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.  Nowhere in the petition does the petitioner affirmatively state that he would have insisted on going to trial. See United States v. Dixon, 105 Fed. Appx. 450, 452 (4th Cir. 2004)(noting that defendant could not demonstrate prejudice under Strickland because he did not allege that he wanted to go to trial and Rule 11 hearing showed that he was certain he would be convicted). The petitioner has not shown any reason as to why he might have opted for a trial.  See Dixon, 105 Fed. Appx. at 452 (noting that defendant admitted participation in charged offense and had no plausible defense).  Therefore, even if this court were not dismissing the petition for its untimeliness, the petitioner would be unable to prove that he was prejudiced by his attorney's alleged conduct.

### b.    Failing to Investigate the Petitioner's Background and Request a Competency Evaluation

Next, the petitioner claims that his counsel was ineffective for failing to investigate the petitioner's background and request a competency evaluation. Specifically, the petitioner argues that if his counsel had investigated his background, including his extensive criminal history, that his counsel would have requested a competency evaluation based on the fact that a normal young person

9

would not commit such crimes. The petitioner further supports his claim with the fact that his mother received social security benefits for him when he was a child. The petitioner claims that, apart from just failing to raise this issue, his counsel prevented this court from making an adequate competency determination.

The test for determining competency is whether "[a defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . and whether he has a rational as well as a factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402 (1960). Not every manifestation of mental illness or learning disability demonstrates incompetence; rather "'the evidence must indicate a present inability to assist counsel or understand the charges.'" Burket v. Angelone, 208 F.3d 172, 191 (4th Cir. 2000) (quoting United States ex rel. Foster v. De Robertis, 741 F.2d 1007, 1012 (7th Cir. 1985)). Likewise, neither low intelligence, mental deficiency, nor irrational behavior can be equated with mental incompetence to stand trial. Id.

Assuming *arguendo* that his counsel erred in failing to request a competency hearing, the petitioner has not established that he suffered prejudice affecting the validity of his guilty plea. The record of the petitioner's responses to the court's questions during the plea hearing does not establish any reasonable cause to question the petitioner's competence in the proceedings. See United States v. General, 278 F.3d 389, 396 (4th Cir. 2002) (finding that district court did not err in failing to order competency hearing when record did not establish reasonable cause to question petitioner's competency). During the guilty plea colloquy, the court asked detailed questions of the petitioner to determine if the petitioner understood that he was entering a guilty plea. During such dialogue, the petitioner stated that he had never been treated for any mental illness; that he had fully discussed

the charges made against him and the case in general with his attorney; and that he understood the implications of his plea, the maximum possible sentence he would face, the specifics of the plea agreement he had signed, and the evidence the government would have introduced against him had the case gone to trial.

Above and beyond being bound by these representations, the petitioner's demeanor and responses fully demonstrated to the court his rational and factual understanding of the proceedings against him and failed to give rise to any reasonable cause that the petitioner was incompetent to proceed. See Fields, 956 F.2d at 1299. Accordingly, the petitioner's claim that his guilty plea was not knowing and voluntary is simply not credible in light of his representations during the plea and sentencing hearings. Thus, even if this court were not dismissing his petition on untimeliness ground, the petitioner would be unable to show that any prejudice accrued to the petitioner by the failure of his counsel to raise this issue. See Beck, 261 F.3d at 388, 393 (noting that court may consider petitioner's demeanor in court proceedings in determining whether competency should have been raised, and that petitioner was not prejudiced by counsel's decision not to raise issue of competency as record demonstrated petitioner's competence at time of guilty plea and sentencing); Hooper v. Garraghty, 845 F.2d 471, 472 (4th Cir. 1988)(finding that although counsel should have investigated possibility of insanity defense and pursued mental evaluation, such errors did not prejudice defendant).

    c.    **Failure to Appeal, File Habeas Petition, or Contact Petitioner**

The petitioner also claims he suffered ineffective assistance of counsel because his attorney failed to appeal, failed to file a habeas petition, and has not contacted him since his sentencing. The Fourth Circuit has stated that "a criminal defense attorney's failure to file a notice of appeal when

11

requested by his client deprives the defendant of his Sixth Amendment right to the assistance of counsel, notwithstanding that the lost appeal may not have had a reasonable probability of success." United States v. Peake, 992 F.2d 39, 41-42 (4th Cir. 1993). As a result, when there is a dispute between counsel and the petitioner as to whether the attorney was told to file an appeal, the court must hold a hearing to resolve this disputed material issue of fact. See, e.g., United States v. Pollard, 139 F.3d 895, 1998 WL 166337 (4th Cir. Mar. 24, 1998).

However, in the instant case, the petitioner does not claim that he ever asked his attorney to file a notice of appeal. "When . . . a client does not clearly convey his wishes about an appeal to counsel, the determination as to whether counsel has been ineffective by failing to appeal depends upon 'whether counsel in fact consulted with the defendant about an appeal.'" United States v. Embree, 2006 U.S. App. LEXIS 5216 (4th Cir. 2006)(quoting Roe v. Flores-Ortega, 528 U.S. 470, 478 (2000)). When "counsel has not consulted with his client, the court must then determine whether the failure to consult itself constitutes deficient performance." Id. "If the court concludes that counsel's failure to consult amounted to deficient performance, the defendant also 'must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed.'" Id. (quoting Flores-Ortega, 528 U.S. at 484).

The Supreme Court has held that "counsel has a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. The Court explains:

> In making this determination, courts must take into account all the information counsel knew or should have known. Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal.

Roe v. Flores-Ortega, 528 U.S. 470, 480 (U.S. 2000)(citing Strickland v. Washington, 466 U.S. 668 (1984)).

In this case, there is no indication that the petitioner expressed an interest in appealing to his counsel. Thus, this court must consider whether "a rational defendant would want to appeal", given the totality of the circumstances. In the instant case, the petitioner pleaded guilty pursuant to a plea agreement that allowed him to avoid conviction for two gun charges which carried mandatory consecutive sentences. Furthermore, as discussed above, he received a sentence according to that which he bargained for as part of the plea agreement, as evidenced by his acknowledgment during the plea colloquy that he understood the maximum sentence that he was facing. The fact that he now claims that he was actually promised only 180 months is not persuasive in light of his responses during the plea colloquy, as discussed above. Moreover, the petitioner waived his right to appeal as part of the plea agreement. All of these factors suggest that the petitioner was seeking an end to the judicial proceedings. Thus, the court finds that a rational defendant would not have desired an appeal. Accordingly, even if his counsel failed to consult with him regarding an appeal, the petitioner would not be able to demonstrate that his counsel's actions were deficient. Thus, even if the petition were not untimely, the petitioner would not be able to prove ineffective assistance of counsel based

13

on his counsel's alleged failure to appeal.

As to the petitioner's claim that his counsel failed to file a habeas petition or maintain contact with him after sentencing, the court notes that a defendant has no constitutional right to counsel in his federal habeas proceedings. Jackson v. United States, 319 F. Supp. 2d 672, 677 (E.D. Va 2004) (citing Coleman v. Thompson, 501 U.S. 722, 752 (1991)). The petitioner seems to be under the mistaken impression that his attorney had an obligation to automatically file a habeas petition once his conviction became final. However, "there can only be constitutional ineffective assistance of counsel where there is a constitutional right to counsel." Id. Accordingly, because a defendant does not have a constitutional right to counsel past direct appeal, the petitioner's claim of ineffective assistance of counsel is without merit. Id. Thus, even if his petition were timely, the court would deny this claim.

### 2. Booker

The petitioner also claims that his sentence should be vacated based on United States v. Booker, 125 S. Ct. 738 (2005). However, in United States v. Morris, 429 F.3d 65 (4th Cir. 2005), the Fourth Circuit held that, although Booker announced a new rule, it is not retroactive on collateral review. See also United States v. Gentry, 432 F.3d 600, 601 (5th Cir. 2005); United States v. Cruz, 423 F.3d 1119, 1121 (9th Cir. 2005); Never Misses a Shot v. United States, 413 F.3d 781, 783 (8th Cir. 2005); Lloyd v. United States, 407 F.3d 608, 614 (3d Cir. May 17, 2005); Guzman v. United States, 404 F.3d 139, 144 (2d Cir. 2005); United States v. Price, 400 F.3d 844, 849 (10th Cir. 2005); Humphress v. United States, 398 F.3d 855, 863 (6th Cir. 2005); Varela v. United States, 400 F.3d 864, 868 (11th Cir. 2005); McReynolds v. United States, 398 F.3d 479, 481 (7th Cir. 2005). Because petitioner's conviction was final almost two years before Booker was decided, his reliance upon

Booker is misplaced.

### 3. Double Jeopardy

The petitioner also makes a double jeopardy argument based on the fact that the Commonwealth of Virginia nolle prossed bank robbery charges that were similar to the instant federal convictions. However, even if his petition were timely filed, the petitioner would not be entitled to relief under this claim because, under the dual sovereigns doctrine, prosecution in both the federal and state court for the same criminal conduct is not double jeopardy. Abbate v. United States, 359 U.S. 187, 194 (1959); Heath v. Alabama, 474 U.S. 82, 88 (1985).

### 4. The Youth Act

The petitioner also argues that he should have been sentenced under the Youth Act because he was under 26 years old at the time of his offense. However, section 18 U.S.C. § 5005, commonly referred to as "The Youth Act", was repealed on October 12, 1984. Accordingly, even if his petition were timely, the petitioner's argument is without merit.

### C. Document Request

In his motion, the petitioner also requests that the court bear the cost of providing him the following documents: Indictment, Plea Agreement, Minutes from the Plea Hearing, Minutes from the Sentencing Hearing, Pre-Sentence Investigation Report ("PSR"), and the "Memorandum of Law on the Defendant's Sentence". As to the minutes for the plea and sentencing hearings, the Clerk's Office cannot make copies of such documents because they are not an official part of the record. The court notes that the petitioner has previously moved this court for a copy of his sentencing transcript at no cost. The court denied his previous motion because the petitioner could not show a particularized need to justify receiving the transcript at no cost to him. As to the PSR, the petitioner

does not have the right to obtain a copy of his Presentence Investigation Report, even if he were willing to pay copying costs. As to the "Memorandum of Law on the Defendant's Sentence", the court is not sure to which document the petitioner is referring. However, any portion of the sentencing judge's personal memorandum that the court referenced during the sentencing hearing would be included in the transcript of the sentencing.

With regard to the remaining documents, the court advises petitioner that the court is unable to provide him with the copies he seeks unless he submits payment for copying costs. Even if the petitioner had been granted in forma pauperis status, which the record does not reflect that he has, such status only allows petitioner to proceed without first paying certain filing fees; it does not eliminate petitioner's responsibility to pay for the duplication costs of the documents that petitioner requests in his motion. See In Re Richard, 914 F.2d 1526, 1527 (6th Cir. 1990) ("Although the petitioner was granted leave to proceed in the district court as a pauper, that status waives only 'prepayment of fees and costs and security.' It does not give the litigant a right to have documents copied and returned to [him] at government expense.") (quoting 28 U.S.C. § 1915); Tedder v. Odel, 890 F.2d 210, 211 (9th Cir. 1989) (finding that 28 U.S.C. § 1915 does not waive costs of litigation other than filing of the complaint and service of process); see also United States v. MacCollom, 426 U.S. 317, 321 (1976) ("[T]he expenditure of public funds is proper only when authorized by Congress."). Thus, the court is unable to pay such costs. To obtain copies of the documents petitioner requests, he must pay the cost of duplication to the Clerk.

Currently, the cost of photocopying assessed by the Clerk is $0.50 per page. Petitioner would also be responsible for the cost of postage and any other fees associated with the duplication and mailing of any requested documents. If petitioner wishes to obtain a copy of any of these documents,

16

or any other document in his case file that he is entitled to, he should contact the Clerk and submit payment for the requested materials.

### III. Conclusion

Because the claims brought by the petitioner are claims that challenge his conviction or sentence, the court **CONSTRUES** the petition as one brought pursuant to section 2255. See 28 U.S.C. § 2255. As such, pursuant to the statute of limitations proscribed in the AEDPA, the petition filed on March 8, 2006 is **DISMISSED**. The court also concludes that even if the petition were timely, it would be subject to summary dismissal and would be **DENIED**. Finding no substantial issue for appeal concerning a debatable procedural issue, a certificate of appealability is **DENIED**. See Slack v. McDaniel, 529 U.S. 473, 484 (2000).

The petitioner is **ADVISED** that he may appeal from the denial of a certificate of appealability by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia, 23510 within sixty (60) days from the date of this Order.

The Clerk is **REQUESTED** to mail a copy of this Order to the petitioner and to the United States Attorney, Eastern District of Virginia, World Trade Center, Suite 1800, 101 West Main Street, Norfolk, Virginia 23510.

**IT IS SO ORDERED.**

                /s/
      Jerome B. Friedman
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
May 23, 2006